**UNITED STATES DISTRICT COURT**
**MIDEL DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**JONATHAN HUMPHRIES and**
**FELIX ROMAN,**

        **Plaintiffs,**                  **CASE NO.:   6:16-CV-00109-GAP-KRS**

vs.

**HARTFORD SOUTH, LLC, a Florida**
**Limited Liability Company,**

        **Defendant.**
_____/

**PLAINTIFFS' REPSONSE TO DEFENDANT'S MOTION FOR**
**SUMMARY JUDGMENT AND SUPPORTING MEMORANDUM OF LAW**

        Plaintiffs, JONATHAN HUMPHRIES and FELIX ROMAN (hereinafter referred to as "Plaintiffs"), by and through their undersigned counsel hereby file their Response to Defendant's Motion for Summary Judgment and Supporting Memorandum of Law [D.E. 31] and in support state as follows:

**BACKGROUND**

        1.    Plaintiffs filed their Amended Verified Complaint on August 23, 2016, seeking the recovery of unpaid overtime compensation under the Fair Labor Standards Act, 29 U.S.C. § 201, et al. (hereinafter referred to as the "FLSA").  [D.E. 21].

        2.    The Amended Verified Complaint filed seeks to recover unpaid overtime compensation under federal law, due to Defendant's failure to pay Plaintiffs for time spent performing pre-shift compensable duties to include loading materials into the company vehicles as well as subsequent compensable travel time from the workplace to

the first jobsite and from the last jobsite back to the workplace at the end of each day.

3. Subsequent to discovery, which included numerous depositions, Defendant filed its Motion for Summary Judgment and Supporting Memorandum of Law (hereinafter "Motion") [D.E. 31].

4. For the reasons set forth below, this Court must deny Defendant's Motion in its entirety.

## OVERVIEW

Defendant seeks summary judgment on the following issues: (1) Plaintiffs' pre-shift work was "voluntary" and not integral and indispensable to the principle activities; (2) Plaintiffs' ride time to and from the jobsite was "gratuitous" and not compensable; and (3) Plaintiffs were compensated based on the time they arrived at the first jobsite until the time they left the last jobsite.

The evidence in this case shows that regardless of whether Plaintiffs *could have* gone straight to the jobsite or not in their own personal vehicle, on the days that they went to the yard/shop and assisted in loading materials into the company trucks, they (1) loaded materials that were necessary to perform their duties as roofers, (2) the employer had knowledge of the work performed, and (3) the time spent loading the company vehicles could have been recorded, but for, Defendant's policy that this time and subsequent travel time be excluded.  As outlined below, Plaintiffs' pre-shift loading of materials in company vehicles was integral and indispensable to their principal activities as roofers.  Regardless of whether Plaintiffs *could have* rode in their own vehicles to a jobsite, when they did in fact first go to the yard/shop, they assisted in loading materials

that were necessary for them to complete their jobs as roofers. The materials were therefore intrinsic elements of their job as roofers and Defendant could not eliminate the need for these materials without impairing Plaintiffs' ability to perform their work. Therefore, not only was the time spent loading the vehicles compensable, but the subsequent time spent travelling to their first jobsite and then from the last jobsite back to the yard/shop was all in a days' work and therefore also compensable. Additionally, numerous factual disputes exist which require Defendant's Motion be denied.

## **MEMORANUDM OF LAW**

### I. **Standard on Motion for Summary Judgment**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment should not be entered unless the moving party has sustained its burden of showing the absence of a genuine issue as to any material fact. *Sweat v. The Miller Brewing Co.*, 708 F.2d 655 (11th Cir. 1983). The Court must draw all inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. *See Porter v. Ray,* 461 F.3d 1315, 1320 (11th Cir. 2006). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant the summary judgment motion. *Augusta Iron and Steel Works v. Employers Insurance of Wausau,* 835 F.2d 855, 856 (11th Cir.1988) (per curiam). Here, this Court cannot find as a matter of law that Plaintiffs time spent loading company

vehicles or subsequent travel time is not compensable, and for that reason, Defendant is not entitled to summary judgment. Additionally, there are genuine issues of fact regarding the relevant claims of Defendant's Motion that also warrants a complete denial.

II. **The Portal-to-Portal Act Does Not Exempt Plaintiffs' Pre-shift Compensable Duties or the Subsequent Travel Time**

This issue in this case is whether Plaintiffs ever engaged in any compensable work-related activity prior to their arrival at Defendant's various jobsites. Specifically, if Plaintiffs' act of assisting in the loading of company work vehicles upon arrival at Defendant's shop/yard amounts to work-related activity that is "integral and indispensable" to their work, then that time and any travel afterwards is compensable. Defendant argues that the Portal-to-Portal Act relieves it from liability for failing to compensate Plaintiffs for time spent loading company vehicles and for time spent traveling to and from the company shop/yard and jobsite(s).  Plaintiffs strongly disagree.

The Portal-to-Portal Act addresses the issue of whether time spent working at an employer's shop and travel time is compensable under the FLSA.  Specifically, the Portal-to Portal Act clarified that compensable work does not include:

(1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and

(2) activities which are preliminary to or postliminary to said principal activity or activities, which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities. For purposes of this subsection, the use of an employer's vehicle for travel by an employee and activities performed by an employee

which are incidental to the use of such vehicle for commuting shall not be considered part of the employee's principal activities if the use of such vehicle for travel is within the normal commuting area for the employer's business or establishment and the use of the employer's vehicle is subject to an agreement on the part of the employer and the employee or representative of such employee.

*See* 29 U.S.C. § 254(a)

The term "principal activities" includes all activities which are an "integral and indispensable" part of the principal activities. *Steiner v. Mitchell,* 350 U.S. 247, 252-253, 76 S.Ct. 330, 100 L.Ed. 267 (1956). As such, the FLSA still requires employers to pay employees for activities "integral and indispensable" to their regular work. *Id*. In determining whether an activity is "integral and indispensable", the Eleventh Circuit introduced a multi-factor test that considers (1) whether the activity is required by the employer, (2) whether the activity is necessary for the employee to perform his or her duties, and (3) whether the activity primarily benefits the employer. *Burton v. Hillsborough Cnty., Fla.,* 181 Fed.Appx. 829, 836–37 (11th Cir. 2006). Additionally, federal regulations state that where an employee is required to report at a meeting place to receive instructions or to perform other work there, or to pick up and to carry tools, the travel from the designated place to the work place is part of the day's work, and must be counted as hours worked regardless of contract, custom, or practice. *See* 29 C.F.R. § 785.38. However, in December 2014, the Supreme Court rejected tests like the one articulated in *Burton* to the extent that they focus on whether an employer *required* a particular activity or whether the activity is for the *benefit* of the employer. *Integrity*

5

*Staffing Solutions, Inc. v. Busk,* 574 U.S. ––––; 135 S.Ct. 513, 519, 190 L.Ed.2d 410 (2014). Instead, the Supreme Court in *Busk* held that an activity is "integral and indispensable" to the "principal activities" that an employee is employed to perform if it is an intrinsic element of those activities and one which the employee cannot dispense of if he is to perform his principal activities. *Id.* at 519.

The Supreme Court in *Busk* examines the nature of the specific activity(s) sought to be compensable when determining whether such activity is integral and indispensable to an employee's principal activity(s). For instance, the warehouse employees in *Busk* sought compensability of their post-shift time spent waiting to undergo and while undergoing security screenings before leaving the company warehouse each day. *Busk* at 515. The employer required such screenings to prevent employee theft. *Id*. at 516. During the screening time, the employees removed items such as wallets, keys and belts before they passed through metal detectors. *Id.* The Supreme Court in denying compensability of the time claimed, determined that the security screenings were not an intrinsic element of retrieving products from warehouse shelves or packaging them for shipment and that the employer could have eliminated the screenings without impairing the employee's ability to complete their work. *Id*. at 518. In contrast, the Court in *Busk* explained activities that satisfied their test for compensability, such as meatpackers sharpening knives and battery-plant employees showering and changing their clothes. *Id*. Unlike the *Busk* warehouse workers simply waiting for post-shift security screenings to prevent theft, the meatpackers and battery-plant employees described by the Supreme

Court are more analogous to the facts in the instant case involving roofers loading materials needed to perform their roofing duties each day.

In its Motion for Summary Judgment, the Defendant in this case heavily relied on *Busk*[1], but blatantly ignored the Supreme Court's holding which rejects focusing on whether a particular activity was "required" by an employer and which instead examines the actual activity being performed by the employee seeking compensation. Specifically, Defendant's primary argument for denying owing Plaintiffs wages is that Plaintiffs weren't *required* to ride in a company truck and that Plaintiffs allegedly weren't *required* to load the company trucks. However, Defendant fails to acknowledge that compensability in this case does not hinge on whether the Plaintiffs *could have* gone directly to a company jobsite from their home(s). Although Plaintiffs may have benefitted from the use of Defendant's company vehicles, that alone does not make the time spent loading vehicles at the yard and subsequent travel to and from jobsites non-compensable. *See Burton v. Hillsborough County*, 181 Fed. Appx. 829, 837 (11th Cir. 2006) (holding that while employees benefitted from the use of company vehicles, including saving money, that alone did not make travel time non-compensable).

---

1 Defendant cites to four (4) additional cases, three (3) of which were decided *before Busk*, and among other distinguishing factors, focused on whether the Plaintiffs were *required* to ride in company vehicles. *See Weaver v. Allstar Building Materials, Inc.,* 2009 WL 4041904 (M.D. Fla Nov. 20, 2009) (after Plaintiff failed to respond to Defendant's Motion, the Court held Plaintiff's spent loading only tools was "voluntary" and that even if such loading could be considered compensable it was *de minimis)*, *Knight v. Allstar Building Materials, Inc.*, 2009 WL 3837870 (M.D. Fla. Nov. 17, 2009) (denying compensability of loading and drive time since not required to ride in company vehicle, but more importantly because company truck was already loaded and Plaintiff only moved supplies such as caulk or screws from the cab of the truck so that he could sit in the cab); *Balzarano v. Allstar Building Materials, Inc.*, Case. No.: 6:08-cv-00281-Orl-35GJK (M.D. Fla., July 16, 2009) (denying compensability of load time since most materials were already at the jobsite and any workers "required" to load company vehicles were compensated for this time). Finally, the only post-*Busk* case cited by Defendant involved home-to-work commute time outside of FLSA protection. *See Shearer v. Edger Associates, Inc.,* 2015 WL 9274928 (M.D. Fla., Dec. 17, 2015)

Defendant in this case shouldn't be able to offer what they essentially define as a "free ride" in a vehicle carrying materials that must be transported to a jobsite in order for work to be performed by its' workers, including Plaintifss, in exchange for free labor. In other words, Defendant shouldn't be allowed to have its cake and eat it too.

Defendant only employed one (1) "yard dog" to load multiple crews' trucks with materials before they travelled to various jobsites. (D. Lovett Depo. at P10, L20-23; P14, L4-7; P25, L25 & P26, L4-5.). Accordingly, the foremen and roofers had to gather and load materials missed by or not completed by the yard dog in order to make it to the various jobsites on time. *See* D.E. 31-1 at P67, L22-25 (hereinafter "Humphries Depo."); D.E. 31-3 at P36, L4 (hereinafter as "Roman Depo.") and Joe Thorne Affidavit at ¶ 10[2]. It was common policy for each crew of roofers to assist their foreman with these preparations. *See* Thorne Aff. at ¶9. In fact, Defendant's General Superintendent, Dennis Lovett, who only reports to owner, Jay Rintelmann and Senior Vice President, Peter Rintelmann, testified that the yard dog "misses stuff." *See.* Dennis Lovett Depo. at P15, L19 (hereinafter as "D. Lovett Depo."). He also testified that the foreman "a lot of times" misses stuff too. *Id.* at L24-25. This alone shows that it was often necessary for Plaintiffs and other roofers to assist in preparing/loading the work trucks in the mornings, and therefore the act of loading such vehicles was integral and indispensable to their principal activities.

If getting a ride to the jobsite, roofers had to arrive by approximately 6a.m. *to get*

---

(denying compensability based on prior holdings that home-to-work travel is exempt under the Portal-to-Portal even when transporting tools necessary for the job).
2 For clarity, reference to Affidavits will be made by reference to the Affiant's last name and reference to the appropriate paragraph of the Affidavit.

*prepared for the day* and on the road in time. (Thorne Aff. at ¶ 6). Dennis Lovett testified that if getting a ride in a company vehicle, he would tell roofers to arrive between 6:15a.m. and 6:30a.m. (D. Lovett Depo. at P20, L4-5). Dennis Lovett knew and witnessed the roofers performing pre-shift compensable duties, but chose to turn a blind eye. Specifically, he instructed the foremen not to tell roofers to gather and load materials, but wasn't going to stop the roofers if they wanted to jump in and help and even if he saw them help. (*Id*. at P17, L25 & P22, L13-14, 18-19). However, the foremen and roofers, including Plaintiffs, were not paid by Defendant until 7:00a.m., which is typically when they arrived at the jobsite each day. *See* Thorne Aff. at ¶ 8, 12; Roman Depo. at P57, L15-16 and *See also* D.E. 14-1 & 14-2 at ¶ 3, 7. Per Dennis Lovett, compensable time for Defendant's roofers starts at 7:00a.m., even if the roofer helps load company vehicles at the yard. *See* D. Lovett Depo. at P20, L9-25; P21, L4-7 and P33, L8-15.

Despite Defendant's argument that Plaintiffs' time spent loading company vehicles was voluntary and therefore not compensable, when applying the test in *Busk* to this case, Plaintiffs' act of loading materials in the company trucks was integral and indispensable to their principal activities as roofers. Plaintiffs testified regarding the various items that they would load into the company vehicles, which included things such as water, ice, nails, glue, plates, screws, board, Styrofoam, T-peel and generators. *See* Humphries Depo. at P 62, L14-15, 19, 22 and Roman Depo. at P37, L9, 14. In addition to that list, items loaded on a daily basis included, things such as tools, screws, towels, insulation plates, insulation, rags, cleaner/cleaning supplies, water, ice, glue, rollers,

9

roller naps, scrapers, brooms, bags and building materials. *See* Thorne Aff. at ¶ 7; Humphries Depo. at P69, L1, 16 and Roman Depo. at P34, L10-11, 23-25. The materials loaded were "needed" in order to perform their daily job as roofers. *See* Thorne Aff. at ¶ 7. Accordingly, Plaintiffs' act of loading these materials into company vehicles was integral and indispensable to their principal activities as roofers. In other words, the materials needed to perform their duties as roofers were intrinsic elements of their job as roofers and Defendant could not eliminate the need for these materials without impairing Plaintiffs' ability to perform their work. Therefore, the time spent loading the work trucks and all time subsequent to this principal activity should have been included as compensable time under the FLSA.

### III. Defendant's *De Minimis* Argument Should Fail Because Defendant Could Have Administratively Recorded Plaintiffs' Time Spent Loading Materials

Defendant argues that even if this Court were to find that Plaintiffs' act of loading materials in the company vehicles could be considered compensable, "any such tasks were *de minimis* at best." However, Defendant, again, fails to apply the proper test for this proposition. The *de minimis* rule is concerned with the practical administrative difficulty of recording small amounts of time for payroll purposes. *See* 29 C.F.R. § 785.47. When applying the *de minimis* rule to otherwise compensable time, the following considerations are appropriate: "(1) the practical administrative difficulty of recording the additional time; (2) the aggregate amount of compensable time; and (3) the regularity of the additional work." *See Burton* 181 Fed. Appx. 829 at 838 citing *Lindow v. United States,* 738 F.2d 1057, 1063 (9th Cir.1984). "An employer may not arbitrarily fail to count as hours worked any part, however small, of the employee's fixed or regular

working time or practically ascertainable period of time he is regularly required to spend on duties assigned to him." *See* 29 C.F.R. §785.48. "Employers, therefore, must compensate employees for even small amounts of daily time unless that time is so miniscule that it cannot, as an administrative matter, be recorded for payroll purposes." *See Lindow*, 738 F. 2d at 1063. For example, in *Kasten v. Saint-Gobain Performance Plastics Corporation*, 556 F.Supp.2d 941 (W.D. Wisc. 2008) the Western District of Wisconsin held that time spent donning and doffing protective gear was compensable and not *de minimis* where the employer estimated that it took between 4.117 and 4.755 minutes to accomplish the task. The Court reasoned that since the employer could estimate this time, it was not an administrative burden to track this time and the employees must be paid for this time worked. *Id*. at 953-955.

Defendant in this case has not attempted to argue or even show any practical administrative difficulty in recording Plaintiffs time spent loading work vehicles because they simply cannot do so. Plaintiffs' time was perfectly capable of being recorded, but was forbidden to be recorded by Defendant. Specifically, Defendant's corporate representative and Vice President, Peter Rintelmann, testified that even if Plaintiffs were loading vehicles, this time was "minimal at best" and "outside of their scope of work and their job description" as roofers and they should therefore not be paid for this time. (P. Rintelmann Depo. at P14, L1-9; P17, L12-21 & P18, L9-19). Additionally, former foreman, Joe Thorne, testified that he and other supervisors/foremen had knowledge that roofers were loading materials at the shop, but that they (foremen) were instructed by Defendant that their time and the roofers' time, including Plaintiffs', was not to start until

they arrived at the jobsite, which was typically at 7:00a.m. (Thorne Aff., ¶ 6, 8, 11 & 12) In fact, Dennis Lovett testified that he instructed the foremen not to tell the roofers to assist with gathering and loading materials, even though he knew of and even witnessed roofers doing so, and that the roofers' time was to start at 7:00am. *See* D. Lovett Depo. at P17, L25; P20, L9-25; P21, L4-7; P22, L18-19 and P33, L8-15.

Clearly, since Defendant could have recorded the time worked by Plaintiffs, it was not an administrative burden. Instead, Defendant chose not to record or pay for this time. Based on the foregoing, this Court cannot find as a matter of law that the time Plaintiffs spent loading company vehicles was *de minimis,* and Defendant is therefore not entitled to summary judgment on this ground.

### IV. Numerous Fact Disputes Exist Which Preclude Summary Judgment in Defendant's Favor

In its Motion, Defendant overlooks numerous fact disputes which require denial of summary judgment in Defendant's favor. For purposes of Defendant's Motion, this Court must construe all facts and inferences in the light most favorable to Plaintiffs here and deny a motion for summary judgment where genuine disputes of fact exist. *Porter v. Ray,* 461 F.3d 1315, 1320 (11th Cir. 2006). While other fact disputes exist, these factual disputes alone require denial of Defendant's Motion in its entirety.

   a. <u>A Fact Dispute Exists as to the Amount of Time, if any, Plaintiffs Spent Loading Company Vehicles, and if so, Whether Defendant had Knowledge</u>

Plaintiff, Humphries, testified that he arrived at Defendant's yard/shop at 6:00a.m. *See* Humphries Depo. at P60, L22. Plaintiff, Roman, testified that he generally arrived between 6:00a.m. and 6:15a.m. *See* Roman depo. at P33, L2. Joe Thorne testified that if

getting a ride to the jobsite, roofers arrived at approximately 6:00a.m. to get prepared and on the road. *See* Thorne Aff. at ¶ 6.  Dennis Lovett testified that he told roofers to arrive between 6:15a.m. to 6:30a.m. or much earlier if the job was an hour away. *See* D. Lovett Depo. at P20, L4-8.  Plaintiffs and their former foreman/supervisor, Joe Thorne, testified to the various materials that Plaintiffs loaded into Defendant's company vehicles before leaving to the jobsites.  *See* Humphries Depo. at P 62, L14-15, 19, 22; P69, L1, 16, Roman Depo. at P34, L10-11, 23-25; P37, L9, 14 and Thorne Aff. at ¶ 7. However, several current employees of Defendant testified that they never witnessed or could not recall whether Plaintiffs assisted in loading company vehicles.  For example, General Superintendent, Dennis Lovett, testified that although he witnessed roofers loading company vehicles, he didn't recall ever seeing Humphries or Roman load any materials in the morning, but that Roman "may have." *See* D. Lovett Depo. at P17, L25; P18, L10-11, 23).  Although Plaintiffs were not on his crew, foreman/supervisor Diego Serrudo, testified that he never witnessed Plaintiffs loading materials at the yard. *See* Serrudo Depo. at P23, L10, 21-23; P24, L19; P25, L21-23. However, foreman/supervisor Bennett Davis, testified that he didn't see Roman help load materials, but that Humphries "maybe" assisted Joe Thorne or others.  *See* Davis Depo. at P33, L22; P32, L6-7. Clearly, there are several facts in dispute regarding whether Plaintiffs performed pre-shift duties.

Additionally, there are several factual disputes regarding the extent and the amount of time Plaintiffs spent performing the alleged pre-shift duties, which may impact this Court's decision regarding Defendant's *de minimis* argument.  For instance, if this

Court were to disregard Plaintiffs' position that Defendant could have recorded Plaintiffs' time and that this time is therefore not *de minimis*, there are genuine fact disputes regarding the amount of time Plaintiffs spent loading the company vehicles. As outlined above, there is conflicting testimony as to whether Plaintiffs ever performed pre-shift work at all. Also, although Defendant attempts to mischaracterize Joe Thorne's testimony to say that Plaintiffs never spent more than five (5) minutes performing pre-shift work, he instead merely testified that certain specific tasks assigned to various crew members would take approximately five (5) minutes each.  More importantly, he and Plaintiffs testified to a myriad of other tasks performed before leaving the yard and at no time testified that these tasks collectively took only a few seconds or minutes which *may* make them appear *de minimis*. *See Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 692, 66 S. Ct. 1187 (1946) (Holding that a few seconds or minutes of activity amount to trifles that may be disregarded as *de minimis*).

  b. Fact Disputes Exist as to Defendant's Pay Policy During Plaintiffs' Employment Which Thereby Supports Plaintiffs Allegations that They Performed Pre-shift Duties that Defendant Simply Refused to Pay

Despite Defendant's legal basis for denying payment to Plaintiffs in this case *since* Plaintiffs' filing of the instant action, there are material facts in dispute regarding Defendant's actual pay policy regarding the issues in this case *during* Plaintiffs' actual employment. For example, General Superintendent, Dennis Lovett, testified that if he sees a roofer help load a truck for more than 15, 20 minutes, he pays them a half an hour. *See* D. Lovett at P. 23, L13-15; P25, L12-13.  However, he would "probably not" pay the roofer if only loading for 10 minutes.  *Id.* at P25, L22.  On the other hand, he also

14

testified that compensable time for Defendant's roofers starts at 7:00a.m., even if the roofer helps load company vehicles at the yard. *Id*. at P20, L9-25; P21, L4-7 and P33, L8-15. However, Peter Rintelmann testified that because it isn't in a roofers' job description, time spent loading materials into work vehicles should not be paid regardless of whether a supervisor/foreman had knowledge. (P. Rintelmann Depo. at P14, L1-9; P17, L12-21 & P18, L9-19). Additionally, there is a factual dispute and conflicting testimony regarding how roofers versus foreman were paid for this alleged compensable time. For instance, although no former or current foreman corroborates this testimony, Dennis Lovett testified that all foremen including Joseph Thorne were/are paid an additional thirty (30) minutes to do what he has to do "rather than being on the roof." *See* D. Lovett Depo. at P29, L14-18; P30, L11). However, in addition to the conflicting testimony provided by Joseph Thorne, Peter Rintelmann also testified that until eight or nine months prior to his deposition, which was *after* Plaintiffs' employment with Defendant, "everyone on the crew would be paid the same hours as the foreman, and there was never any issue with the number of hours worked by any crew member. It was always copasetic." *See* P. Rintelmann Depo. at P22, L14-17 and Thorne Aff. at ¶ 8.

As such, the material fact disputes outlined above also require that Defendant's Motion be denied.

**V. Plaintiffs Have Always Alleged and Continue to Acknowledge That They Were Compensated from 7:00 a.m. to 3:30 p.m. While at The Jobsite**

Defendant's seek summary judgment on the "claim" that Plaintiffs were only paid from the time they got on and off the roof at the jobsite. Even if Plaintiffs, as roofers, consider the time at the jobsite as time spent on and off a roof, Plaintiffs have always

alleged and continue to acknowledge that they were paid for their regular scheduled hours of 7:00a.m. to 3:30p.m.  Plaintiffs in their verified complaint alleged that they routinely arrived at Defendant's workplace at 6:00a.m. and that upon arrival they would perform compensable pre-shift duties, such as loading materials in to Defendant's company vehicles, without compensation. *See* D.E. 21 at ¶ 20-22.  Plaintiffs further alleged that they were not compensated for the subsequent travel time to and from the jobsite. *Id.* at ¶ 23. In the Answers to Court's Interrogatories, Plaintiffs testified that their normal scheduled hours were from 7:00a.m. to 3:30p.m., but that they regularly worked additional hours outside of this schedule. *See* D.E. 14-1 & 14-2 at ¶ 3. Plaintiffs further answered that they "did not earn compensation for all hours worked while performing pre-shift duties and while driving from the shop to the first jobsite and from the last jobsite back to the shop…." *Id.* at ¶ 7(d). Plaintiffs' verified complaint and Answers to the Court's Interrogatories are consistent with the testimony recited by Defendant in its Motion for Summary Judgment.  Accordingly, Defendant is not entitled to summary judgment on this *non*-issue.

WHEREFORE, Plaintiffs respectfully request this Court issue an Order denying Defendant's Motion for Summary Judgment in its entirety and for any other relief that is deemed just and proper.

Dated:  February 8, 2017                                      Respectfully submitted,

*/s/ Kimberly De Arcangelis*
Kimberly De Arcangelis, Esq.
Bar No.: 0025871
MORGAN & MORGAN, P.A.
20 N. Orange Ave., 14th Floor
Orlando, FL 32801

17

           Telephone:   (407) 420-1414
           Facsimile:    (407) 245-3383
           Email:  kimd@forthepeople.com
           Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 8, 2017 I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

           */s/ Kimberly De Arcangelis*
           Kimberly De Arcangelis, Esq.