IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JONATHAN HUMPHRIES and
ROMAN FELIX,

    Plaintiffs,

vs.                                                               Case 6:16-cv-00109-GAP-KRS

HARTFORD SOUTH, LLC, a
Florida Limited Liability Company,

    Defendant.
_____/

## DEFENDANT, HARTFORD SOUTH, LLC'S, REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND SUPPORTING MEMORANDUM OF LAW

Defendant, Hartford South, LLC ("Defendant" or the "Company" or "Hartford South") pursuant to Rule 56, Fed R. Civ. P., hereby files this Reply to Plaintiffs' Response to Defendant's Motion for Summary Judgement (the "Motion") and would state as follows:

Plaintiffs, in their response to Defendant's Motion, admit to the one critical fact that provides this Court the basis for granting Defendant's Motion. Plaintiffs admit that they could have taken their own mode of transportation to and from the jobsites as opposed to coming to the yard in the mornings to catch the free company-provided transportation. Such undisputed fact makes any alleged time spent by Plaintiffs assisting their driver in loading the trucks is exempt from compensation under the FLSA. *See Bonilla v. Baker Concrete Construction, Inc.*, 487 F.3d 1340 (11th Cir. 2007). Indeed, Plaintiff Roman admitted to driving his personal vehicle to and from the jobsites on many instances. Since Plaintiffs had the option of taking their own means of transportation to and from the jobsite each day, and this is undisputed – even by Plaintiffs' counsel

in her Response brief (....Plaintiffs could have rode in their own vehicles to a job site..." Response Brief, Doc 35, p. 2), any alleged work in the yard in the morning while waiting to take the free company-provided transportation to the jobsite could never be integral and indispensable to their principle activities as roofers as a matter of law. As the Supreme Court stated in *Integrity Staffing Solutions, Inc. v. Busk*, 574 U.S.__; 135 S.Ct 513; 190 L.Ed. 2d 410 (2014):

> This Court has consistently interpreted "the term 'principal activity or activities' [to] embrac[e] all activities which are an 'integral and indispensable part of the principal activities.' " *IBP, Inc. v. Alvarez*, 546 U.S. 21, 29–30, 126 S.Ct. 514, 163 L.Ed.2d 288 (2005) (quoting *Steiner v. Mitchell*, 350 U.S. 247, 252–253, 76 S.Ct. 330, 100 L.Ed. 267 (1956)). And, when used to describe a duty, "indispensable" means a duty "[t]hat cannot be dispensed with, remitted, set aside, disregarded, or neglected." 5 OED 219; accord, Brief for United States 19; see also Webster's Second 1267 ("[n]ot capable of being dispensed with, set aside, neglected, or pronounced nonobligatory"). ***An activity is therefore integral and indispensable to the principal activities that an employee is employed to perform if it is an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform his principal activities.*** (emphasis added)
> *Id.* at 517.

Therefore, if the Plaintiffs went directly to the jobsite (as Plaintiff Roman did on numerous occasions and Humphries concedes he could have done) they were still able to perform their jobs as roofers. Plaintiffs have presented no evidence that would suggest otherwise. Thus, their voluntary presence at the yard in the mornings and any alleged minor activities performed (getting a water cooler or an extra box of nails or some rags) could not be considered as an integral and indispensable to the principle activities the Plaintiffs were to perform since, if they elected to take their own means of transportation to and from the jobsite, they could simply perform their work when they arrived at the jobsite. Again, Plaintiffs have not presented one scintilla of evidence that they could not have performed their jobs unless they first went to the yard in the mornings.

In order for Plaintiffs to establish that their activities were integral and indispensable, they would have to show that any activities were an intrinsic element of their job and could not dispensed with if they were to perform their principal activities. If this were the case, then all

2

roofers would have been required to report to the yard in the mornings before taking the free company-provided transportation to and from the jobsite so that they could perform the principal activities that were an integral and indispensable to their job. Plaintiffs have not shown, in any way, that this was the case and thus, summary judgment is appropriate.

In their Response Brief (Doc 35), it is interesting to note that Plaintiffs gloss over the holdings in the case law cited by Defendants, from the Middle District of Florida, by simply referring to them in a footnote. (Doc 35, P7) (see *Weaver v. Allstar Building Materials, Inc.*, 2009WL4041907 (M.D. Fla. Nov. 20, 2009); *Knight v. Allstar Building Materials, Inc.*, 2009WL 3837870 (M.D. Fla. Nov. 17, 2009); *Dade County, Fla. v. Alvarez*, 124 F.3d 1380, 1384 (11th Cir. 1997)(activities performed before or after regular work shift are compensable only if they are integral and indispensable part of the principal activities for which employee is employed); *Balzarano v. Allstar Building Materials, Inc.*, unpublished opinion (Doc. 62), Case No.: 6:08-cv-00281-Orl-35GJK (M.D. Fla., July 16, 2009)(loading trucks in advance and riding as a passenger in company truck to jobsite was non-compensable preliminary and postliminary activities); *Shearer v. Edger Associates Inc.*, 2015 WL 9274928 (M.D. Fla., Tampa Div., Dec 17, 2015).[1] None of these cases has been distinguished by Plaintiffs and these cases are still good law in this district and this circuit.

The *Weaver* case from the Middle District of Florida, for example, is directly on point. This case was discussed at length in Defendant's Motion for Summary Judgment and for purposes of this Reply, will not be repeated herein. Suffice it to say that the court in *Weaver* entered summary judgment for the employer on basically the identical facts to the instant case, calling any

---

[1] Defendant has cited numerous cases in support of its position that summary judgment is appropriate and thus Defendant would reincorporate those cases in its argument herein.

3

work ahead of time as preliminary to Weaver's principal activities and not integral and indispensable to his job because Weaver could have driven to the worksite on his own. *Weaver*, 2009 WL 4041907, * 3 ("[A]lthough Weaver testified that when he rode in the Allstar trucks he also loaded tools ..., such loading was, like the riding itself, voluntary on his part—he could have driven to the worksite on his own and the tools would have been there when he arrived—and was not an "integral and indispensable" part of his job but was merely "preliminary to" Weaver's principal activities and, under 29 U.S.C. § 254(*a*)(2), was noncompensable."); *see also Balzarano v. Allstar Building Materials, Inc.*, unpublished opinion (Doc. 62), Case No.: 6:08-cv-00281-Orl-35GJK (M.D. Fla., July 16, 2009)(holding that time spent assisting driver in loading truck is exempt from compensation under the FLSA loading trucks in advance and riding as a passenger in company truck to jobsite was non-compensable preliminary and postliminary activities because plaintiff decision to meet and ride on company truck was entirely voluntary and all materials would have been at jobsite, with or without his assistance).

These two cases, along with the other cases cited by Defendant in its Motion, clearly demonstrate that any activities done by the Plaintiffs before they took the company-provided free transportation to the jobsite should be considered as merely preliminary activities. Moreover, to the extent that Plaintiff Humphries is trying to claim any postliminary activities, the same analysis would apply.

Further, in their Response, Plaintiffs rely heavily on *Burton v. Hillsborough County*, 181 Fed. Appx. 829 (11th Cir. 2006). Plaintiffs reliance on this case is misplaced, and this case is easily distinguishable from the case at bar. In the *Burton* case, Hillsborough County policy prohibited employees from taking county owned vehicles home at the end of the workday. Instead, the policy required them to drive their personal vehicles to a secure county-operated or owned site (the

"parking site"), like a fire station, drop off their personal vehicles, pick up the county vehicles, and drive those county vehicles to their respective work sites. At the end of each work day, the employees then had to return the county vehicles to the parking site and retrieve their own vehicles before returning home. Because county employees were required to drive their personal vehicles to county-operated site, drop off their personal vehicles, pick up the county vehicles, and drive those county vehicles to their respective work sites, the court determined that they were entitled to compensation from the time they picked up the county vehicle until the time they brought it back at the end of the workday.

These facts are totally inapposite to the instant case. Unlike *Burton* where the county workers were required to come to a particular location to pick up a county vehicle each day to begin their workday, Plaintiffs in the instant case were never *required* to come to the yard in the mornings or at the end of the day. They could simply go directly to the jobsite and in many instances (see particularly Plaintiff Roman) they did. Plaintiffs, as well as their attorney, admit this fact. There is no disputed issue of fact that Plaintiffs, as well as other roofers, could find their own means of transportation to and from the actual jobsite and there was no requirement for them to report to the yard in the mornings or at the end of the day. Thus the *Burton* case has no real application to the instant case.

Moreover, of the three prong test Plaintiff cites from the *Burton* case to determine if an activity is integral and indispensable, Plaintiffs fail to meet two of these prongs. The first prong is whether the activity is required by the employer. Since it is undisputed that coming to the yard in the morning was voluntary, Plaintiffs cannot meet this prong of the test. The second prong of the test is whether the activity is necessary for the employee to perform his or her duties. As has been shown in pages 1-2 above, Plaintiffs could (and did in the case of Roman) arrive at the jobsite

5

without going to the yard in the morning and still were able to perform their duties as a roofer without any difficulty. Therefore any preliminary activities could not be considered as necessary, integral and indispensable activities for the Plaintiffs to be able to perform their work at the jobsite.

The more analogous case is *Bonilla v. Baker Concrete Construction, Inc.*, 487 F.3d 1340 (11th Cir. 2007). In *Bonilla*, the issue before the court was whether the time construction workers spent traveling in employer-provided transportation to a secure construction site inside the airport was compensable under the FLSA. *See Bonilla*, 487 F.3d at 1340-41. Just as in our case, it was undisputed in the *Bonilla* case that the employees did not perform any work while traveling in the employer-provided transportation. *Id.* at 1342. The court concluded that the travel time was not compensable under the Portal-to-Portal Act; it was merely travel to the employees' actual place of performance of their principal activity. *Id.* at 1343.

The *Bonilla* court specifically distinguished the *Burton* case, stating:

In *Burton*, the county employees' duties required them to drive the county vehicles to and from various public works locations and to always return the county vehicle to a secured county facility overnight. This court found that the time the employees spent driving from the secured county location to the various work sites was compensable under the FLSA because picking up and delivering the county vehicles to the county lots was integral and indispensable to the employees' principal activities. In addition, Burton found that the vehicles served as satellite offices for those employees to do their jobs at the various sites and tools necessary for the work were locked in the county vehicles. In *Burton*, driving the vehicles was not merely part of the employees' commute to the principal place of performance but rather an aspect of that job performance.

Other undisputed factors that show that any preliminary activities were not integral and indispensable to Plaintiffs' job include the following:

1. Plaintiff Roman testified that no one ever told him that he was required to use the company-provided transportation (Roman Depo; P.88; L 16-19) and Roman admits that he was not required to take the company-provided transportation to and from the jobsite. (Roman Depo; P28; L16-19). It is undisputed that Plaintiffs could have driven their own vehicles from their

6

#49555003_v1

respective homes to the jobsite each day or arrived at the jobsite by any other means of transportation. In fact, on many occasions Roman testified that he drove his own vehicle directly to the jobsite. (Roman Depo; Pages 24-28). Additionally, Roman testified that others, including foremen, drove their vehicles to the jobsite on occasion. (Roman Depo; Page 29).

    2.    When Plaintiff Humphries was asked at his deposition if the company had not provided free transportation for him to and from the jobsite, if he would have been able to work for Defendant, Humphries replied as follows:

>   Q    So would it be fair to say that if Hartford South did not provide company transportation to the job sites in the morning, that you would not have been able to work for Hartford South?
>   A    I wouldn't say that.
>   Q    All right. How would you have got to the job sites then?
>   A    Bus line.

Humphries Depo (P.42; L25; P43; L1-7).

Thus, there is no question, from both Plaintiffs' testimony, that the company-provided transportation was voluntary.

    3.    It is undisputed that Plaintiffs could arrive at the jobsite from their home and that they could still do the job for which they were hired. Plaintiff Roman is a prime example of this as he admitted, on several occasions, that he drove his own vehicle to the jobsite. (Roman Depo; Pages 24-28). He was still able to perform his duties as a roofer whether he drove directly to the jobsite or whether he elected to take the company-provided free transportation to the jobsite. This has never been in dispute, nor is it disputed by Plaintiffs in their Response brief.

Therefore, since the company-provided transportation was voluntary, and Plaintiffs were allowed to arrive at the jobsite from their homes each day by any means of transportation whatsoever, it would be unreasonable and irrational to conclude that any preliminary activities at the yard in the morning were anything but that - preliminary (and thus not compensable) - as they

clearly were not integral and indispensable to the Plaintiffs' performance of their job. Otherwise, they would have been required to report to the yard in the mornings if that were the case.

## CONCLUSION

For the reasons set forth above, there are no genuine issues of material fact in this case and Defendant is entitled to summary judgment as a matter of law. Defendant therefore requests that this Court grant the Motion for Summary Judgment.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on February 21, 2017, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following: Kimberly De Arcangelis, Esq., Morgan & Morgan, P.A., 20 N. Orange Avenue, 14th Floor, Orlando, Florida 32801.

/Stephen T. Ball
Stephen T. Ball
Florida Bar No. 716121
stephen.ball@hklaw.com
Luis J. Gonzalez
Florida Bar No. 055881
luis.gonzalez@hklaw.com
HOLLAND & KNIGHT LLP
200 South Orange Avenue, Suite 2600
Post Office Box 1526 (Zip 32802)
Orlando, Florida 32801
Telephone: 407-425-8500
Trial Counsel for Defendant,
Hartford South, LLC