**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**JONATHAN HUMPHRIES and FELIX ROMAN,**

      **Plaintiffs,**

**v.**                                                     **Case No:   6:16-cv-109-Orl-31KRS**

**HARTFORD SOUTH, LLC,**

      **Defendant.**

## ORDER

This matter is before the Court, without a hearing, on the Motion for Summary Judgment (Doc. 31) filed by the Defendant, Hartford South, LLC ("Hartford South"); the Response in Opposition (Doc. 35) filed by the Plaintiffs, Johnathan Humphries and Felix Roman; and Hartford South's Reply thereto (Doc. 36).

**I.     Background**

Hartford South is a roofing and construction company located in Orlando, Florida. Hartford South hired Roman on October 31, 2012, and hired Humphries on October 28, 2014. Both were hired as roofers[1] for projects in the Orlando area, and both were laid off on September 28, 2015. (Doc 21 ¶ 17; Doc. 31-3 at 11–12; Doc. 31-1 at 28:21–4.)

Hartford South provides transportation for its employees in its trucks to and from the jobsite. (Doc. 31–1 at 42–43; Doc. 31-3 at 24–29.) However, employees were not required to take

---

[1] Humphries "was not a full roofer," but rather was as a "helper" or "laborer." (Doc. 31-1 24–25.) However, Plaintiffs both allege that they performed "roofing duties" for Hartford South, therefore, both will be referred to as roofers for the purposes of this Order. (Doc. 21 ¶ 17.)

this transportation. If an employee drove his own vehicle or found alternate transportation, he could arrive directly at the jobsite and was not required to report back to Hartford South's shop at shift's end. Hartford South's trucks left the shop for the jobsite around 6:30 or 6:45 a.m. Thus, if an employee wished to travel to the jobsite in the trucks, he would arrive at Hartford South's shop between 6:00 and 6:30 a.m. (Doc. 32-1 at 60:22; 31-3 at 33:2–13.)

Typically, thirty to thirty-five employees would arrive at Hartford South's shop to ride in its trucks, and out of those, five or six would help load various items into the trucks. (Doc. 31-3 at 45.) The materials that needed loading varied on any given day, but often consisted of water coolers, nails, glue, plates, screws, boards, towels, rags, rollers, brooms, scrapers, and various other items. (Doc. 31-1 at 16; Doc. 31-3 at 34.) Occasionally, they would load larger building materials or a replacement generator. (Doc. 31-3 at 38.) If either Roman or Humphries were taking the trucks to the jobsite, they would help load. (Doc. 31-5 at 43.)

Plaintiffs allege that, during their employment with Hartford South, they were not paid overtime for time worked in excess of forty hours in a work week. (Doc. 21 ¶ 25.) Specifically, Plaintiffs admit that they were paid for their regular shift, from 7:00 a.m. to 3:30 p.m. (Doc. 35 at 15–16.), but claim they were uncompensated for time spent loading trucks at Hartford South's shop (Doc. 21 ¶ 21–22) and time spent riding in Hartford South trucks to and from the jobsite. (Doc. 21 ¶ 23.)

Hartford South argues that any time spent loading or riding in its trucks to and from the jobsite is not compensable under the Portal-to-Portal Act, 29 U.S.C. § 254(a).[2]

---

[2] Hartford South describes Plaintiffs' pre-shift activities a "de minimus at best," but it does not provide any legal argument on that point. (Doc. 31 at 5, 6, 7, 17.)

**II.     Summary Judgment**

A party is entitled to summary judgment when it can show that there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(c); *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458 (11th Cir. 1994). Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Watson v. Adecco Employment Servs., Inc.*, 252 F. Supp. 2d 1347, 1351–52 (M.D. Fla. 2003). In determining whether the moving party has satisfied its burden, the court considers all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolves all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255.

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324–25 (internal quotations and citations omitted). Thereafter, summary judgment is mandated against the non-moving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id.* at 322, 324–25; *Watson*, 252 F. Supp. 2d at 1352. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value") (citations omitted); *Broadway v. City of Montgomery, Ala.*, 530 F.2d 657, 660 (5th Cir. 1976).

**III.  The Fair Labor Standards Act**

Under § 207 of the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201–19, "an employer may not employ his employee for a workweek longer than forty hours unless his employee receives overtime compensation at a rate not less than one and a half times his regular rate." *Allen v. Bd. of Pub. Educ. for Bibb Cty.*, 495 F.3d 1306, 1314 (11th Cir. 2007) (citing 29 U.S.C. § 207(a)(1)). "A person is employed if he or she is suffered or permitted to work." *Id.* (citing 29 U.S.C. § 203(g)). "It is not relevant that the employer did not ask the employee to do the work," and neither is the "reason that the employee performed the work." *Id.* "If the employer knows or has reason to believe that the employee continues to work, the additional hours must be counted." *Id.* (internal quotation marks and citations omitted).

But an employee cannot be entitled to overtime compensation if the work performed is not compensable. *Brantley v. Ferrell Elec., Inc.*, 112 F. Supp. 3d 1348, 1369 (S.D. Ga. 2015) (citations omitted). The Portal-to-Portal Act, 29 U.S.C. § 254(a), exempts specific activities from compensation under the FLSA. Under this provision, an employer is not required to pay an employee for:

> (1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and
>
> (2) activities which are preliminary to or postliminary to said principal activity or activities, which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities. For purposes of this subsection, the use of an employer's vehicle for travel by an employee and activities performed by an employee which are incidental to the use of such vehicle for commuting shall not be considered part of the employee's principal activities if the use of such vehicle for travel is within the normal commuting area for the employer's business or establishment and the use of the employer's vehicle is subject to an

>>agreement on the part of the employer and the employee or representative of such employee.

*Id.* (emphasis supplied).

### A. Preliminary or Postliminary Activity

The term, "principal activity or activities" refers to those activities that are an "integral and indispensable part of the principal activities." *Integrity Staffing Sols. Inc. v. Busk*, 135 S. Ct. 513, 518 (2014) (citations omitted). Before the United States Supreme Court's holding in *Integrity Staffing Solutions Inc. v. Busk*, 135 S. Ct. 513 (2014), the Eleventh Circuit employed a multi-factor test to determine whether activities were integral and indispensable, and, therefore, compensable. *Bonilla v. Baker Concrete Const., Inc.*, 487 F.3d 1340, 1344 (11th Cir. 2007). That test required consideration of "(1) whether the activity is required by the employer, (2) whether the activity is necessary for the employee to perform his or her duties, and (3) whether the activity primarily benefits the employer." *Id.* But in *Busk*, the Court rejected the above test as overbroad and significantly narrowed compensable pre- and post-shift activities.

In *Busk*, the Court clarified that the "integral and indispensable test is tied to the productive work that the employee is *employed to perform*." *Id.* at 519 (emphasis in original). Under this test, an activity is integral and indispensable if it is an intrinsic element of those principal activities that an employee is employed to perform and "one with which the employee cannot dispense if he is to perform his principal activities." *Id.* Thus, even pre- or post-shift activities required by the employer and for the employer's benefit can be considered "preliminary" or "postliminary," and, therefore, non-compensable as long as they are not indispensable. *Balestrieri v. Menlo Park Fire Protection Dist.*, 800 F.3d 1094, 1101 (9th Cir. 2015).

For example, in *Busk*, employees were hired to retrieve products from the shelves of a warehouse and package those products for delivery. *Busk*, 135 S. Ct. at 515. At the end of each

- 5 -

day, "the employees were required to undergo a security screening before leaving the warehouse;" a process that took around twenty-five minutes each day. *Id.* Even though the security screening was required by and benefited the employer, the Court found that "the screenings were not an intrinsic element of retrieving products from warehouse shelves or packaging them for shipment," and that they could be eliminated "without impairing the employees' ability to work;" therefore, the time spent during the screenings was non-compensable. *Id.* at 518.

Here, it is undisputed that Plaintiffs' regularly scheduled shifts began at 7:00 a.m., when they arrived at the jobsite, and ended at 3:30 p.m., when they left the jobsite. (Doc. 35 at 15–16.) Thus, any work performed at Hartford South's facilities before Plaintiffs arrived at the final jobsite was performed pre-shift. Further, the evidence shows that Plaintiffs, as roofers, were not hired to load trucks at Hartford South's facilities in the morning; rather, that was the responsibility of the foremen and "yard dog." (Doc. 35-1 at 13–15; Doc. 35-2 at 16.). Thus, the loading of the trucks was not a principal activity that Plaintiffs were employed to perform. Therefore, the issue before the Court is whether the Plaintiffs' act of loading various materials into Hartford South's trucks before their shifts began was an activity which Plaintiffs could not dispense with if they were to perform their principal activities—i.e., roofing.

First, the evidence suggests that the loading of the trucks at Hartford South's shop was completely voluntary—only five or six of the thirty to thirty-five roofers who reported to the shop helped load trucks. Other employees "hung around, waiting to leave." (Doc. 31-3 at 44.) Second, it is undisputed that Plaintiffs could have reported directly to the jobsite in the mornings and left directly from the jobsite at shift's end, without ever reporting to Hartford South's shop. Indeed, Roman did just that on at least twenty-five to thirty occasions, and Humphries testified that he could have taken the bus—effectively eliminating Plaintiffs' truck-loading activities. (Doc. 31-1 at

42–43; 31-3 at 24–25.) Finally, there is no evidence that any roofer's ability to work was impaired when Roman or any other roofer reported directly to the jobsite instead of Hartford South's shop to load trucks. It follows that Plaintiffs' loading of the trucks was not an integral and indispensable activity and, therefore, not compensable.

### B. Traveling to and from the Place of Performance

Plaintiffs also argue that the time spent riding to and from the jobsite in Hartford South trucks is compensable. The record does not support such a theory.

As discussed above, the record shows that the principal activity or activities that Plaintiffs were employed to perform began when they arrived at the jobsite, not Hartford South's shop. Namely, roofers could avoid reporting to the shop altogether and report directly to the jobsite. The Portal-to-Portal Act explicitly exempts time spent "walking, riding, or traveling to and from the actual place of performance of the activity or activities which [an] employee is employed to perform." 29 U.S.C. § 254(a)(1). While not controlling,[3] the Department of Labor has given some examples of what it considers non-compensable travel:

> (1) walking or riding by an employee between the plant gate and the employee's lathe, workbench or other actual place of performance of his principal activity or activities; (2) riding on buses between a town and an outlying mine or factory where the employee is employed; and (3) riding on buses or trains from a logging camp to a particular site at which the logging operations are actually being conducted.

29 C.F.R § 790.7(f).

---

[3] The Department of Labor's interpretations "are not promulgated regulations because Congress did not authorize the Secretary of Labor to issue regulations regarding the scope of the exemptions." *Bonilla v. Baker Concrete Const., Inc.*, 487 F.3d 1340, 1343 (11th Cir. 2007) (citing 29 C.F.R. § 790.1; *Gonzales v. Oregon*, 323 U.S. 243, 254–56 (2007)).

Here, it is undisputed that no roofing-related work was performed while Plaintiffs rode in Hartford South's trucks. (Doc. 31-1 at 79–80) And, as discussed above, Plaintiffs traveled in the trucks from the shop to the particular sites where roofing work—the principal activity that Plaintiffs were hired to perform—was to be conducted. This travel clearly falls within the travel exception of the Portal-to-Portal Act. *See Bonilla v. Baker Concrete Const., Inc.*, 487 F.3d 1340, 1343 (11th Cir. 2007) (finding that employees' time spent riding on employer-provided transport to the jobsite was not compensable because the actual place of performance of the principal activity that the employees were employed to perform was the destination, and no work was performed in the trucks). Therefore, the time traveling in Hartford South's trucks is not compensable.

Thus, because both the "work" loading the trucks and the time traveling to the final place of performance falls within the Portal-to-Portal Act, Plaintiffs are not entitled to compensation for that time, and summary judgment is appropriate.

It is therefore, **ORDERED** that Defendant's Motion for Summary Judgment (Doc. 31) is **GRANTED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on March 31, 2017.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party